HEARD NOV. TERM, 1871.

## TRENHOLM vs. CHARLESTON.

Under an ordinance to raise supplies, taxes were assessed upon plaintiff's property by a municipal corporation, and the Treasurer of the corporation being about to enforce payment under the provisions of a general ordinance, requiring all taxes to be "paid in specie or in the notes of specie-paying banks," plaintiff offered as payment a debt, of equal amount with the taxes, due him by the corporation: *held*, that the plaintiff had no right, legal or equitable, to compel the corporation to receive the debt as payment or satisfaction of the taxes, or as a counter claim under the Code of Procedure, or as a set-off or discount.

Taxes of a municipal corporation are assessed under its political powers, and where its ordinance directs the medium of payment, such ordinance must be complied with.

BEFORE GRAHAM, J., AT CHARLESTON, APRIL TERM, 1871.

On March 12th, 1844, the City Council of Charleston passed a general ordinance "to regulate the collection of City taxes," &c., which provides "that taxes and assessments for the use and service of the City shall be paid in specie or the notes of specie-paying banks."

On October 14th, 1848, the same Council passed an ordinance directing the issue of City six per cent. stock, to the amount of $200,000, redeemable in twenty years, and the stock was accordingly issued.

In pursuance of an ordinance of the same Council, passed March 22d, 1870, entitled "An Ordinance to raise supplies for the fiscal year ending December 31, 1870," taxes were assessed upon the property of George A. Trenholm, to the amount of $1,614.85. By an ordinance passed February 24th, 1870, the taxes to be raised for 1870 were all appropriated to certain specific purposes therein named, the payment of the stock issued under the ordinance of October, 14th, 1848, not being one of them.

George A. Trenholm was the owner and holder of stock issued under the ordinance of October 14th, 1840, to the amount of $1,614.85, which was due and unpaid, and the City Treasurer being about to enforce payment of the taxes assessed upon his property as aforesaid, he offered the stock owned and held by him, as payment or satisfaction thereof. The City Treasurer refused to receive the stock in payment of the taxes, and thereupon the said George A. Trenholm commenced this action against the corporation and two of its officers, the City Treasurer and the City Sheriff, to compel the former to receive the stock as a satisfaction of, or counter-claim to, the taxes, and to enjoin the latter from collecting the taxes.

His Honor, the presiding Judge, made a decree, dismissing the complaint with costs, and the plaintiff appealed.

*Magrath & Lowndes*, for appellant.

*Corbin, City Attorney*, contra.

[The points made in the argument are stated in the opinion of the Court. The following authorities were cited : For appellant—City Charter, Act 1783, 7 Stat., 98 ; Waterm. on Set-off, 41 ; *Gray* vs. *Burnett*, 3 Metc., 522 ; *Concord* vs. *Pittsburgh*, 33 N. H., 310 ; 33 N. H., 522 ; *Wilson* vs. *Lewiston*, Watts & Serg., 428 ; 4 Stat. 624 ; *State* vs. *Gaillard*, 1 Bay, 500 ; *State* vs. *Gordon*, 1 Bay, 492 ; *Treasurers* vs. *Cleary*, 3 Rich., 372 ; Cooley, 492 ; Code, § 173. For appellees—*State* vs. *Hunt and Pinckney*, 3 Strob., 400 ; *Britton* vs. *Mayor, &c., of New York*, 21 How. Pr. R., 251 ; *Presbyterian Church* vs. *Mayor, &c., of New York*, 5 Cow., 538 ; *Goszler* vs. *Georgetown*, 6 Wheat., 593 ; *Graniteville Manfg. Co.* vs. *Roper*, 15 Rich., 156 ; *Vassear* vs. *Livingstone*, 13 N. Y., 257 ; 3 Bl. Com., 395 ; *Pierce* vs. *Boston*, 3 Metc., 521 ; 1 Pars. on Con., 5 ; Wat. on Set-off, § 37 ; 2 Kent Com., 450, 477 ; *Greene* vs. *Darling*, 5 Mason, 201 ; *Dade* vs. *Irwin's Exors.*, 2 How., 390 ; *Howe* vs. *Sheppard*, 2 Sumner, 409 ; *Greene* vs. *Darling*, 2 Sumner, 214 ; *Darlington* vs. *Mayor, &c., of New York*, 31 N. Y., 193 ; *Hayne* vs. *Hood*, 1 S. C., 16 ; 1 Bl. Com., 91 ; 1 Kent Com., 448 ; *Lindsay* vs. *Commissioners*, 2 Bay, 38.]

April 22, 1872. The opinion of the Court was delivered by

MOSES, C. J. The general power of the City Council of Charleston to impose taxes is not controverted on the part of the appellant. Neither is any question made in regard to the character of the tax demanded. It is therefore to be assumed as rightly assessed.

An injunction, however, is claimed to restrain the enforcement of the execution for taxes against the plaintiff, and the penalty for nonpayment thereof, and for a decree to compel the defendants to receive in satisfaction certain past due city stock.

The ordinance of the City Council entitled "An ordinance to regulate the collection of city taxes," &c., ratified on March 12, 1844—Eckhard's Comp., 270—provides "that taxes and assessments for the use and service of the city shall be paid in specie or the notes of specie-paying banks." While this restriction on the means through which the taxpayer may meet the contribution

which the city exacts of him for its use and purposes, is conceded to be within the legitimate power, either expressly granted, or by necessary implication conferred by the charter, it is claimed that a past due debt of the corporation, held by the plaintiff, may be set off against the taxes now about to be enforced against him.

In the imposition of taxes by a municipal corporation, it exercises a legislative function derived from the grant of powers which the State has devolved upon it for the purposes contemplated by its charter. Many of these powers, as was said by Chief Justice Nelson, in a case to be hereinafter referred to, are of the kind and nature which appertain to a citizen in his individual character, and as to these, it is bound and controlled by the same rules which regulate private rights. Contracts which, through its charter and by-laws, it is permitted to make, bind it to the same extent as the like agreements between individuals would bind them. In the same manner would it be responsible for any breach of duty, or for a failure to observe the obligations imposed by its charter, where loss or damage is the consequence. There is a wide distinction, however, between the enforcement of rights against a State and a municipal corporation. Whatever obligations rest upon a State, as no process is effectual to make it a party to a judicial proceeding, the judgments of the Court cannot reach or control it. The security of claims against a sovereign State, rests upon its high sense of honor and moral obligation. The case of *Pinckney*, 4 Strob., 400, so much relied on in the argument of the counsel for the appellees, fails of application to the points made by the pleadings before us, because there the purpose of the *mandamus* indirectly, but virtually, sought to recover from the State a debt claimed against it. The exemption which thus prevails in favor of a State in no way can be extended to protect a municipal corporation from suit, or to prevent a citizen, when sued by it, from setting up any legitimate subject of discount.

The rights of the corporation to impose and collect taxes does not rest upon a contract. It is not founded on any agreement based on mutual assent. "Taxes are burdens or charges imposed by the legislative power upon persons or property to raise money for public purposes."—Cooley, 479. Their imposition is an exercise of political rights, and carries with it the privilege of determining the nature and character of the funds which shall be accepted for their payment.

The Ordinance of 1844 was dictated by proper views of policy,

and exhibits, on the part of those entrusted with the administration
of the municipal affairs, a due regard to the confidence which
was reposed in them. The means of sustaining the City Govern-
ment were to be secured beyond the possibility of failure, for, on the
certain collection of the funds necessary for that purpose, the very
existence of the corporation depended. The good of the many
must be preserved, even at the expense of individual loss and sacri-
fice. There was a necessity for some provision by law through
which the medium in which taxes were to be paid should be fixed,
for, otherwise, the very object of taxation might be defeated. This
requisition was foreknown to the tax payer, and, therefore, cannot
be the subject of surprise or complaint on his part. The idea of
certainty is necessarily connected with taxation. It is called, in
Tamlin's Law Dictionary, (Title "Tax,") "a tribute or imposition
laid upon the subject, which, being certainly or duly rated, was
wont to be yearly paid into the King's Exchequer. It differs from
what is commonly called a subsidy, in this, that it is always certain."

The stock by which it was proposed to pay the tax was not issued
until 1848, and when the plaintiff purchased it, he was admonished
by the Ordinance of 1844, that he could not make it available for
the purpose he now proposed. Doubtless it would have acquired
additional value, if it had been recognized as a currency appli-
cable to such use.

Is the corporation bound to accept it? If the imposition of taxes
or the direction of the currency in which they are to be paid was
the exercise of legislative authority by the Council, within the
grant of their charter, they cannot be required to receive the stock
offered in payment by the plaintiff.

In *Britton* vs. *The Mayor, &c., of N. Y.*, 21 Howard, 251, it was
held that the Common Council cannot tie up or embarrass the ex-
ercise of their public duties by contract or otherwise, so as to disable
them from enacting any law that may be deemed essential for the
public good. That they cannot limit their legislative discretion by
covenant, and are not estopped from giving that answer. This, too,
was in a case where the Council had entered into a covenant for
cleaning the streets, piers and wharves of the city.

It had been previously held, in *Presbyterian Church* vs. *City of
New York*, 5 Cowen, 538, that a corporation cannot, by contract,
abridge their legislative power. How far we may be impressed with
the principles applied in these cases to contracts entered into by
municipal corporations, and their performance not prevented by

the interferance of State legislation, we are not prepared now to say. They, however, are in point to shew the extent to which such corporations are permitted to go, while in the exercise, under their charter, of what may be termed political power.

Taxes are raised to meet the current expenses of the city, and to pay claims which have been recognized, and for all of which appropiations are annually made.

The operation of the whole machinery of the city government depends on these appropriations, made with a corresponding regard to the amount of supplies to be raised. If they are to be diverted to objects foreign to, and not contemplated by their enactment, there is not a department of the city which might not be affected even to destruction, to say nothing of the losses and disappointments of those whose claims may have been admitted and ordered for payment by the Council. There would be gross injustice in requiring the defendants to receive this stock in payment of the taxes for 1870, due by the plaintiff. The supplies to be raised by the tax for that year have all been set apart, by appropriations, to stated purposes. A specific application has been made of them, involving the direct and preferred rights of other parties, which, if not defeated, would at least be postponed, if the amount of money to be raised could be reduced by the reception of any other medium in payment of the taxes assessed.

It is further submitted by the complaint that the stock due by the city is a legitimate subject of set off, against the assessment and execution for taxes.

The provisions of the Code, Section 173, do not apply to the counter claim proposed. There is no connection between the tax assessed against the plaintiff and the debt in city stock, which he holds against the defendants. The right to tax rests on no contract, and, therefore, no cause of action arising on contract can be set off against it. The process for its collection does not rest in action, but on mandate.

Neither can relief be afforded to the plaintiff in the matter of his proposed counter claim through the rule which, in analogy to the doctrine of law in regard to set off, prevails in equity.

The view that we have taken of the whole case precludes us from extending to the plaintiff's claim either the legal or equitable principles on which the rights of set-off depend.

The motion is dismissed.

*Willard*, A. J., and *Wright*, A. J., concurred.